Chief Justice Robertson,
.delivered the opinion of the court.
Mrs. A:im E. F. Smith, widow of Daniel Smith, deceased, formerly of Louisville, being entitled by her husband’s will to part of a ten acre lot and other estate in 1 .ouisvillc, and b eing about to remov e from that place to Newark, in New-Jerrey, gave to Wm. >S. Vernon, of the former place, a plenary power of attorney, to manage, or sell and convey, her said estate, in any manner he might deem advantageous to her interest.
Early in the year 1828, John I. Jacob proposed to Vernon, to purchase from him, as agent, Mrs. Smith’s entire interest in the ten acre lot; but Vernon refused to sell it to him, and informed him that he intended to divide the lot and sell it infractions. Accordingly the sale of the property in subdivisions was advertised by Vernon, and in May, 1828, he sold a part of it; by verbal contract, to John C. Bucklin. Aware of that fact, Jacob authorized a preacher, named Banks, to make a contract with Mrs. Smith for her original interest in the lot.
Banks called on Mrs. Smith, in Newark, and made a proposition to purchase her interest in the lot for Jacob; and.she, without knowing that Vernon had refused to make a sale, in gross, to Jacob, or that he had sold a part Of the lot to Bucklin, wrote to Jacob on the-S)th of June, 1828, that, K if Vernon had not already disposed of the property,” she would sell it to him (Jacob) for §3,500; to be paid, 1,000 in hand,” “ and §500 every six months following, with interest from the time ‘■filie first pavmcnt, with a lien on the property as se *381 eurity;” and added, “ Mr. Vernon is hereby authorized to close this contract with you, if you approve of it.”
On the same day, she wrote a letter to Vernon, quainting him with what she had done, and expressing regret that the importunity and haste of Mr. Banks, had “ hurried” her into thep reposition, which she had made to Jacob, without sufficient time for deliberation, but expressing a hope, nevertheless, that Vernon would approve what she had done.
On the 23d of June, 1828, Jacob notified Vernon, that he had acceded to Mrs. Smith’s proposition, and was then ready to “close” the contract; and, by a letter, dated the same day, and addressed to Mrs. Smith, he informed her that he had agreed to her proposition, recapitulating its terms, substantially, as stated in her letter to him.
Vernon refused to do any thing in execution of the arrangment, alleging that he had no power, and that his sale to Bucldin was an obstacle.
On the 28th of June, 1828, Jacob wrote another letter to Mrs. Smith, in which he reasoned to convince her that it would be prudent to let him have the property; that a sale in fractions would be ahazardous experiment, and that the sale to Bucldin, not having been reduced to writing, zoos not obligatory on here! She wrote him two answers, in which she expressed regret that she had not been apprised of the sale to Bucldin before she made her proposition, and manifested a desire, although (as she had been informed) the property was worth more than $3,50.0, the contract with Bucldin should be rescinded, if it could be'done “ honorably." Jacobthen, having applied to Vernon to know whether if he (Jacob) would procure a release from Bucldin, he (Ver- ' non) would waive all objection to the effectuation of Mrs. Smith’s proposition, and being informed by Vernon that the proposition could not be carried into effect, filed a bill in chancery for a specific execution of what he considered a contract for the lot. The circuit court, having heard the case on the bill, answer and exhibits, dismissed the bill, and Jacob appealed.
If there had been no condition in Mrs. Smith’s letter, or if there had been no previous sale of any partoi the property bv Vernon, the correspondence between _ *382 her aud Jacob would have exhibited a contract, in writing, signed by both parties, and sufficiently certain and mutual to be specifically enforced. Her proposition, when accepted, would have been matured into a contract, and no lorus pcnilentia would have been left to her. The authority given to Vernon to “cióse the contract,” did not imply that he was to make the contract, but only that he should carry it into effect, by receiving the money and the notes, and by securing the hen. The executory agreement for the sale, would have been perfect without Vernon’s co-operation or agency. See Sug’d. on Ven. 45, C, 7; I Mad. Ch’y. 29c, and the authorities there cited.
Verbal contract icr the sale of land is morally obligatory upon the. vendor. A vendor of land by verbal contract cannot be compelled to avoid it by pleading the statute of frauds and perjuries.
Where a principal proposes to sell land to a person, “provided, his agent has not already disposed of it,” if, it turns out that the agent has previously sold the land by verbal contract, the principal is not bound to 'plead the 'itatufo of frauda and perjuries, and thereby to vacate the contrae made by his agent.
*382 But, in consequence of the condition, the proposition was never converted into a contract. The meaning of that condition is, that if Vernon had made any sale, which would affect the proposed sale of the entire interest, the proposition was not to be obligatory. He had made such a sale; a sale that Mrs. Smith had a right to ratify, and which it was,perhaps, her interest to effectuate. Although it was merely verbal, it was morally obligatory upon her. She certainly could not be compelled to avoid it, by pleading the statute of frauds and perjuries. She is not willing thus to avoid it. She agreed to sell her entire interest to Jacob, if Vernon had not sold it, or part of it. He had sold a part of it, and, therefore, she made no contract to sell it again.
Jacob insists on a conveyance to himself of Mrs. Smith’s total interest, and to effect that object, he urges her to. defeat Bucklin by insisting on the statute of frauds and perjuries! This she is not bound to do; nor has he any moral right to advise her to do it, and thereby to incur the odium of violating plighted faith; and for no other purpose than to give away, perhaps, a portion of her property.
The proposition made to Vernon can have no influence. He had no power to change or modify Mrs. Smith’s proposition. It does not appear that Bucklin would have relinquished his contract; and if he had been willing to do so, perhaps M-s. Smith’s interest would have been prejudiced by such rescisión, and-therefore, it was not her duty to consent to it.
T. T. Crilt md-n. Duncan, Mills and Brown, for appellant; J. J. Crittenden and Denny, for appellee.
It has not been intimated, that Bucklin was dissatisfied with his contract, or was not anx'ous for its ful ilment. The fact, then, that a part of the lot had been sold to him, and that the proposition to sell to Jacob, was on the condition that there had been no previous sale, is an insupportable barrier to the relief sought by the bill.
We need not decide whether there are other objections, which might be sufficient. But we are inclined to doubt, whether, if there had been no sale to Bucklin, the equity of the appellant would not have been too questionable to authorize him to demand a specific execution with full confidence of success.
Decree affirmed.